(132 So. 706)

**WEAVER v. STATE.**

**7 Div. 730.**

Court of Appeals of Alabama.

March 3, 1931.

Frank B. Embry, of Pell City, for appellant.

Counsel argues for error in rulings assigned, but without citation of authorities.

Charlie C. McCall, Atty. Gen., for the State.

SAMFORD, J.

The charge is that defendant murdered an infant just born to his wife. The facts tend to show that this defendant and his wife, Lena, were married December 28, 1928; that at the time of the marriage Lena had already three children; that on May 5, 1929, she gave birth to another fully developed baby about eight or ten inches long and weighing about eight pounds; that on the morning of the birth she was up and about the house at 5 a. m.; that Dan (defendant) left about that time and she cleaned up the house; that shortly after Dan left the house she felt the first pains of childbirth; that she was alone and at once begun as best she could to prepare for the coming event. She got into her gown, folded a sheet, placed it on the bed and she then laid down on the folded sheet and pulled another over her. The birth proceeded rapidly. In a short time, alone and unaided, the babe was born, accompanied with an excessive flow of blood and water and the afterbirth. There was no other person present to aid her, so she pulled the umbilicus in two, and, weak and exhausted from the labor and loss of blood; she lay where she was and the babe remained in the blood and water and under the sheet for some forty minutes, until her husband, the defendant, returned about 9 o'clock a. m. When defendant came in, his wife told him she had had a miscarriage, and, taking the sheet by the corners, folded it over the babe and blood and afterbirth and told defendant to go and bury it. He took the sheet just as it was given him and went out the back door. As he was going out, he found a pastboard shoe box into which he placed the bundle, carried it to the toilet and dumped the contents of the sheet into the toilet, together with the shoe box. Defendant then immediately ran for his mother, who lived a short distance, and then hurried for a doctor who arrived about 10:30 o'clock. Soon as he examined the woman, the doctor asked for the baby, and defendant said he could not get it. The doctor then told him he ought to get it.

The doctor then being examined as a witness for the state was asked: "What did he (defendant) say then?" This question was objected to on the grounds that it was incompetent, irrelevant, illegal, and immaterial. The objection was overruled, and defendant excepted. The defendant then answered: "He said he couldn't get the baby, and I asked him the size of the baby, then he said the whole thing, the baby, afterbirth and all (indicating). He told me he put it in his toilet." Motion was made to exclude this answer; motion was overruled and exception reserved.

If the foregoing is offered as an inculpatory statement made by defendant, then its admission was error, for the reason that it was not affirmatively shown to have been a voluntary statement. All statements of this nature are presumed to be involuntary unless the contrary is shown. Carr v. State, 17 Ala. App. 539, 85 So. 852; Whitehead v. State, 16 Ala. App. 427, 78 So. 467; 7 volume So. Digest Criminal Law 517 (3). If the statement was not in its nature inculpatory then it was immaterial and irrelevant, the only tendency of which was to prejudice the defendant's cause before the jury.

In addition to the facts above stated, there was evidence tending to prove by medical experts that the baby was born alive; that this was indicated by air in a portion of the lungs. By microscopic examination it was ascertained that the baby had breathed after birth, but it was also testified to by these same experts that the lungs had never been fully inflated, and that it was only by minute microscopic examination that it could be ascertained that the baby had ever breathed. These same men of science also testified that the babe lying in the blood and water incident to the birth could have breathed into its lungs the matter found there during the autopsy,

and that lying in this condition for forty minutes might have produced death. The undisputed evidence was that the child, upon being born, lay between the legs of the mother and in the blood and water for forty minutes or more before defendant came into the house or knew anything about the birth, and was dead when he came in. There was no evidence that defendant ever saw the child or ever knew it was alive, and the only direct evidence was to the contrary. The whole gruesome sordid details of the birth and disposition of the babe was before the jury, all of which was calculated to prejudice the minds of the jury in favor of a conviction. But granting that the child's lungs were partially inflated with air and this condition could only have come about after birth, and assuming even that the defendant knew that what he dumped into the toilet along with the afterbirth and shoe box was a baby recently born, there is no evidence tending to prove that this defendant ever saw the baby alive, or that it was alive when defendant carried it out of the house, nor is there any evidence that the baby came to its death by the hand of defendant or any other person.

As good a definition of corpus delicti, as can be found is in 16 Corpus Juris, 771 (1578); i. e., "The corpus delicti is a compound fact made up of two things: (1) The existence of a certain act or result forming the basis of the criminal charge; and (2) the existence of criminal agency as the cause of this act or result." Measured by the above rule, there is an entire absence of evidence in this case proving or tending to prove the corpus delicti. In the absence of such evidence, no conviction can be allowed to stand, and the trial court should have given the defendant the general charge as requested. The judgment is reversed, and the cause is remanded.

Reversed and remanded.