213 So.2d 695 (1968)
Maerine STOKES, Individually, and Arthur Lee Stokes, Petitioners,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation Authorized to Do Business in the State of Florida As an Insuror, and the American Arbitration Association, a New York Corporation, Respondents.
No. 36839.
Supreme Court of Florida.
July 10, 1968.
Rehearing Denied September 23, 1968.
*696 Fuller & Brumer, Bolles, Goodwin & Ryskamp, Miami, for petitioners.
Blackwell, Walker & Gray and James E. Tribble, Miami, for respondents.
Howard Hadley, Gainesville, of Law Offices of Philip Barton, Gainesville, amicus curiae.
THORNAL, Justice.
By certiorari we review a decision of a district court of appeal which passes upon a question of great public interest according to the accompanying certificate which brings with it our jurisdiction to decide the matter. Fla. Const. Art. V, § 4(2), F.S.A.; Stokes v. Liberty Mutual Insurance Co., 202 So.2d 794 (3d Dist.Ct.App.Fla. 1967).
The question which we must answer is suggested by the certificate: Whether parents have a cause of action under the Wrongful Death of Minors Act, Fla. Stat. § 768.03 (1965), F.S.A., for the death of a stillborn child resulting from prenatal injuries.
In the circuit court Liberty Mutual sought a declaratory decree. It named as defendants Maerine Stokes and her husband, Arthur Lee Stokes. Also included was the American Arbitration Association. It was alleged that the Stokes had sought arbitration before the Association pursuant to the terms of an uninsured motorist clause in an automobile policy issued to them by Liberty. The Stokes based their claim on Fla. Stat. § 768.03 (1965), F.S.A., alleging the wrongful death of a stillborn child as a result of the negligence of an uninsured motorist. In the trial court it was stipulated that: (1) Mrs. Stokes was about seven months pregnant at the time of the accident on February 27, 1965, and, (2) the question of the viability of the fetus was immaterial to a determination by the chancellor. The stillbirth occurred on March 4, 1965. The Stokes filed a demand for arbitration by the Association. They claimed damages for injuries to Mrs. Stokes. Our present problem, however, stems from their alleged parental claim for the wrongful death of the fetus based upon Fla. Stat. § 768.03, F.S.A., supra.
The chancellor entered a final decree which: (1) held that recovery for the death of the stillborn fetus could not be accomplished under § 768.03, supra; (2) permanently enjoined the Stokes from further prosecuting their alleged claim based upon the death of the fetus; and (3) permanently enjoined the Association from entering any award against Liberty based upon such a claim. On appeal the Third *697 District Court of Appeal affirmed. Stokes v. Liberty Mutual Insurance Co., supra.
The case presents a problem of initial impression in Florida. However, our jurisdiction derives from the petition for certiorari buttressed by the so-called "certificate of great public interest". We, therefore, proceed directly to the merits.
For clarity of presentation, we provide at the outset definitions of certain words that will appear with some frequency. We take these definitions from Stedman's Medical Dictionary, (2nd lawyers' ed. 1966). They are as follows:
(1) Fetus  "[The] product of conception from the end of the eighth week to the moment of birth."
(2) Stillborn  "Born dead."
(3) Viable  "Capable of living; denoting a fetus sufficiently developed to live outside of the womb."
(4) Viability  "Capable of living; the state of being viable;"
(5) Quick  "Pregnant with a child the movement of which is felt."
For similar definitions reference may be had to Dorland's Illustrated Medical Dictionary (24th ed. 1965).
It is agreed that the Stokes must recover, if at all, on the right of action created by § 768.03, supra, which reads in part as follows:
(1) Whenever the death of any minor child shall be caused by the wrongful act, negligence, carelessness or default of any individual * * * the father of such minor child, or if the father be not living, the mother may maintain an action against such individual * * * and may recover, not only for the loss of services of such minor child, but in addition thereto, such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess." (Emphasis added).
The crux of our problem is immediately apparent. We must decide whether a stillborn fetus, prenatally injured by negligence, is a minor child within the contemplation of § 768.03. If it is, then the Stokes have a cause of action. If it is not, then the chancellor ruled correctly and the decision of the District Court should be approved.
It is not inappropriate to consider the nature of the action created by § 768.03. It is a new and independent cause of action, unknown to the common law. It recognizes the basic relationship between parent and child. It is not a derivative action in a technical sense because it awards damages suffered by the parent independently of any right of action in the deceased minor. Latimer v. Sears, Roebuck & Co., 285 F.2d 152, 86 A.L.R.2d 307 (5th Cir.1961); Klepper v. Breslin, 83 So.2d 587 (Fla. 1955); Nolan v. Moore, 81 Fla. 594, 88 So. 601 (1921).
Nolan v. Moore, supra, reminds us that since the statute is remedial in nature it should be construed so as to afford the remedy clearly intended. On the other hand, it should not be extended to create rights of action not within the intent of the lawmakers as reflected by the language employed when aided, if necessary, by any applicable rules of statutory construction. Klepper v. Breslin, supra.
The Stokes did not proceed under Fla. Stat. § 45.11, F.S.A., our so-called "survival statute". There, with limited exceptions, an action for a personal injury survives the injured party and may be maintained in the name of his personal representative. The action under § 45.11 is derivative because the representative recovers only such damages as were suffered by his decedent.
Similarly, the Stokes do not claim under Fla. Stat. § 768.01, F.S.A., our general "death by wrongful act" statute. Conceivably this would be possible if they could: (1) establish a stillborn fetus as *698 "any person" under the statute; and (2) have someone appointed administrator of this so-called "person" so as to be able to bring the action in the order of priority fixed by Fla. Stat. § 768.02, F.S.A. The action created by § 768.01 appears to be derivative because it gives a right of action in certain situations which would have entitled "the party injured" to sue if death had not ensued. However, under § 768.02 the recoverable damages are those suffered by the party entitled to sue in his own right regardless of damages recoverable by the decedent. Hence the derivative aspect disappears.
We are not here called upon to determine whether the stillborn fetus is a "person" or a "party" under the last two cited sections. The Stokes, rather, insist that a fetus qualifies as a "minor child" under § 768.03.
Some aspects of our instant problem should be recalled. They are:
(1) The parties stipulated that viability of the fetus is immaterial. In some states, where recovery has been allowed, viability is a critical element.
(2) The fetus was stillborn. This is not a case where the infant survived delivery and achieved the life and personality of a living person, even for a short time.
(3) We are not here concerned with the right of Mrs. Stokes to recover for her own personal injuries  including the pain and anguish of miscarriage.
(4) Here, the father sues to recover for the death of an alleged "minor child" in the form of a stillborn, seven month old fetus. He seeks damages for the loss of services of the "minor" and for the mental pain and suffering of his wife and himself.
Certain judicial landmarks plot the development of the concept of liability for prenatal injuries.
The seed of a rule of potential liability for the wrongful death of a fetus was revealed in Dietrich v. Inhabitants of Northampton, 138 Mass. 14, 52 Am.Rep. 242 (1884). A four to five month non-viable fetus was prematurely delivered. Justice Holmes held that the fetus was a part of the mother and not a "person" under the Massachusetts statute. The fetus was not a separate human being. In this view, only the mother suffered damage, and she could recover solely on this basis.
In Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N.E. 638 (1900), the Supreme Court of Illinois denied a right of action to a surviving child who claimed that he had been injured during the latter days of his prenatal development. Denial was based on the Holmes precedent and fear of fraudulent claims. The significant dissent of Justice Boggs, however, was the beginning of the rule allowing recovery of a child born alive but who had suffered an injury prenatally during the period of viability.
It was not until Bonbrest v. Kotz, 65 F. Supp. 138 (D.D.C. 1946) that the Boggs view finally gained acceptance. Here, Bette Bonbrest, who survived, was allowed to recover for injuries allegedly received in a negligent delivery. Dietrich was distinguished on the ground that the fetus there was nonviable. The Bonbrest court took note of the posthumous property rights of an unborn child and of the medical advances in detecting viability to establish fetal identity separate from the mother.
The Bonbrest rule has gained extensive modern acceptance. It should be emphasized that this rule of liability requires: (1) injury during the period of fetal viability; and (2) the child must survive to maintain its own action. Georgia, in Hornbuckle v. Plantation Pipe Line Co., 212 Ga. 504, 93 S.E.2d 727 (1956), permits recovery by a surviving child for an alleged prenatal injury at anytime subsequent to conception regardless of viability. There seems to be some tendency in this direction. Even so, it is required that the child be born alive. Torigian v. Watertown *699 News Co., 352 Mass. 446, 225 N.E.2d 926 (1967).
The first American case which allowed recovery for the wrongful death of a viable, stillborn fetus was Verkennes v. Corniea, 229 Minn. 365, 38 N.W.2d 838 (1949). The statute allowed recovery by the personal representative of "the decedent" who was fatally injured by a wrongful act. The Minnesota Supreme Court equated a stillborn, viable fetus with the term "decedent".
In Porter v. Lassiter, 91 Ga. App. 712, 87 S.E.2d 100 (1955), a mother allegedly one and a half months pregnant suffered an injury which she claimed caused a miscarriage three months later. The Georgia Code allowed recovery for "the homicide of a child, minor, or sui juris * * *". The Appeals Court, not the Supreme Court, awarded recovery for the miscarriage of the quick but nonviable fetus. The court stated that it followed the precedent of other jurisdictions but cited none.
In a number of states the statutes allow recovery for the wrongful death of a "person". The decisions are divided as to whether a stillborn, viable fetus which is the victim of a prenatal injury will be treated as a "person" under these statutes. Speiser, Recovery for Wrongful Death, Ch. 5 (1966).
Illustrative of those which treat the viable fetus as a person are: Rainey v. Horn, 221 Miss. 269, 72 So.2d 434 (1954); Mitchell v. Couch, 285 S.W.2d 901 (Ky. Ct. App. 1955); Stidam v. Ashmore, 109 Ohio App. 431, 167 N.E.2d 106 (1959); Wendt v. Lillo, 182 F. Supp. 56 (N.D.Ia. 1960); Gorke v. Le Clerc, 23 Conn.Sup. 256, 181 A.2d 448 (1962); State, Use of Odham v. Sherman, 234 Md. 179, 198 A.2d 71 (1964), with a strong dissenting view; Fowler v. Woodward, 244 S.C. 608, 138 S.E.2d 42 (1964); Todd v. Sandidge Constru. Co., 341 F.2d 75 (4th Cir.1964), with a significant dissent; and Kwaterski v. State Farm Mut. Automobile Ins., 34 Wis.2d 14, 148 N.W.2d 107 (1967).
On the other hand, a number of equally strong and persuasive decisions have held that a stillborn, viable fetus is not a person under similar death statutes. Illustrative of these are: Drabbels v. Skelly Oil Co., 155 Neb. 17, 50 N.W.2d 229 (1951); Howell v. Rushing, 261 P.2d 217 (Okla. 1953); Norman v. Murphy, 123 Cal. App.2d 95, 268 P.2d 178 (1954), not a "minor person"; In re Logan's Estate, 4 Misc.2d 283, 156 N.Y.S.2d 49 (Surr.Ct. 1956); Keyes v. Constru. Service, Inc., 340 Mass. 633, 165 N.E.2d 912 (1960); Mace v. Jung, 210 F. Supp. 706 (Alaska D. 1962); Durrett v. Owens, 212 Tenn. 614, 371 S.W.2d 433 (1963). Graf v. Taggert, 43 N.J. 303, 204 A.2d 140 (1964); Carroll v. Skloff, 415 Pa. 47, 202 A.2d 9 (1964); and Powers v. City of Troy, 4 Mich. App. 572, 145 N.W.2d 418 (1966).
While the foregoing decisions illustrate the development of the divergent views on the general subject, none is potently persuasive because of statutory differences. All except two of the states cited involved statutes allowing recovery for the wrongful death of a "person". They differed markedly as to whether a stillborn, viable fetus is a person. In Georgia and California the statutes seem to refer to "minor child" or "minor person" and these two states appear to differ. Practically all of the cases dealt with injuries to viable fetuses. In the case at bar it is stipulated that viability is immaterial, and the Florida Statute is considerably different from the statutes of the other states.
Florida's Wrongful Death of a Minor Statute was initially passed by the Legislature as Fla. Laws, Ch. 4722 (1899). In 1899 the rule of Dietrich, supra, was accepted as controlling law. At common law a father could recover damages for the loss of services of a minor child who was injured, but not killed, by the wrongful act of another. If the injuries caused death, recovery was denied on the theory that the private wrong to the father merged into the crime resulting from the death. To remedy this condition the statute was passed. Seaboard Air Line Ry. v. Moseley, *700 60 Fla. 186, 53 So. 718 (1910). In 1899, a minor child's services to the family were considered to have substantial value. Fla. Stat. § 768.03, F.S.A. was, therefore, originally enacted to give a parent a right to redress a personal wrong based on the death of a child. Clearly, the element of damages for mental pain and suffering was added because in 1899 in the absence of specific statute, there could be no recovery for mental anxiety absent actual physical impact.
While there is no legislative definition of a "minor child," it is urged that certain statutes suggest recognition of a legal status for unborn children.
For example, we are reminded that Fla. Stat. § 737.01, F.S.A. (1965), our trust accounting law, defines an "incompetent beneficiary" to include "a minor, * * * an unknown person and an unborn person." While recognizing the "unborn person" the Legislature clearly drew a distinction between such a "person" and a "minor".
It is suggested that because Fla. Stat. § 782.10 (1965), F.S.A., originally passed in 1868, makes it a crime to abort a woman of a "quick" child, that, therefore, the death of a fetus at a similar stage of development should justify a civil action. However, the specific reference to the "quick child" in the abortion statute and the omission of such specificity in the civil action statute passed thirty years later would seem to indicate a legislative intent to eliminate the stillborn fetus from the "minor child" category in the civil death action. If this were not its intent, it could easily have been as specific as it was in the criminal statute.
The argument is also made that in property law, the rights of a posthumous child are protected, and, therefore, in a wrongful death action the rights of an unborn child should be protected.
The simple response to this claimed analogy is that while an unborn child has certain rights under property law, his enjoyment of such rights are contingent upon being born alive. Shone v. Bellmore, 75 Fla. 515, 78 So. 605 (1918). This leads to the observation that there is a marked difference between allowing a wrongful death action for the postnatal death of a "minor child" and the allowance of such an action for the prenatal death of a stillborn fetus.
In view of the peculiar language of § 768.03, allowing recovery for the wrongful death of a "minor child", we hold that a stillborn fetus is not within the statutory classification. Conversely, we hold that a right of action for wrongful death can arise only after the live birth and subsequent death of the child. Practically all of the cases relied upon by petitioners turned on the viability of the fetus at the time of injury. This element has been eliminated as a determinant in the instant case by virtue of the stipulation. So the cases cited do not aid them. However, in our view of the Florida Statute, the prior existence of viability does not affect the legal status of the stillborn fetus.
The courts have advanced various arguments denying recovery. Some have suggested that a child "en ventre sa mere" has no independent existence apart from its mother, and that in most instances the wrong may be corrected if the mother sues and recovers for her injuries. Our holding here should not be construed to preclude such recovery in an action by the mother for the personal injury suffered by her. Others have ruled that to allow such suits would open avenues for fraud because of the speculative nature of proof of causation and damages. Still others point to the traditional legislative responsibility in this area of creating new causes of action where none existed at common law.
All of these views have some merit, but our judgment is concluded primarily by the particular language of the Florida Statute in the light of its historical background.
For the reasons announced herein, as well as those stated in the opinion under review, the decision of the district court of *701 appeal is approved and the writ is discharged.
It is so ordered.
CALDWELL, C.J., and DREW and ADAMS, JJ., concur.
ERVIN, J., dissents.