239 So.2d 555

**Hollan S. ADKISON**

v.

**Theresa ADKISON.**

**4 Div. 17.**

Court of Civil Appeals of Alabama.

March 11, 1970.

Rehearing Denied March 25, 1970.

Order After Remandment Aug. 4, 1970.

Farmer & Farmer, Dothan, for appellant.

L. A. Farmer, Jr., J. R. Herring, Dothan, for appellee.

BRADLEY, Judge.

The appellee in this case filed a bill of complaint in the Circuit Court of Houston County, Alabama, in Equity, seeking a dec-

laration by said court that she was entitled to maintain an action for the wrongful death of her minor son and that she was likewise entitled to the benefits received from the prosecution of such a cause of action or settlement of said claim for damages.

Appellant filed an answer to the complaint, and the matter was heard ore tenus by the court sitting without a jury.

At the conclusion of the hearing, the court rendered a decree in which it decided that the appellant-father was not disqualified to maintain an action for the wrongful death of his minor son, but that any damages resulting from such an action or the benefits of any settlement made in lieu of further prosecution of the cause of action, would be divided equally between the father and mother of said deceased minor son.

From that part of the decree awarding appellee one-half of the damages resulting from a settlement of the action for the wrongful death of the deceased minor son, appellant appeals to this court.

There were six assignments of error, four of which questioned the award of one-half of the settlement for the deceased minor son being given to the appellee, and two of which questioned the admission of certain evidence during the trial.

The pleadings and testimony heard orally by the court revealed that the appellant and appellee had been husband and wife until February 7, 1965, when they separated. There were two minor sons resulting from this marriage, and they remained with the mother after the separation.

In July 1965 the Law and Equity Court of Houston County, Alabama entered a temporary decree requiring the father to make child support payments to the court in the amount of $100.00 per month for the two children. He was also required to pay the utility bills.

This arrangement lasted until July 26, 1967, at which time the said Law and Equity Court entered a final divorce decree in favor of the appellee-mother on the ground of abandonment, awarded her the care, custody and control of the two sons, gave to appellant certain visitation rights, required appellant to pay $40.00 per month for each son until he reached majority or completed his education, required that appellant execute a deed in favor of appellee, conveying to her all of his interest in certain real property owned jointly, subject, however, to an existing mortgage, and the payment of attorney's fees by appellant for appellee's lawyers, plus court costs.

From July 26, 1967 until June 10, 1969 the two sons lived with their mother, but the father paid the support payments for them to the court, as required by the decree.

On June 10, 1969 the youngest son, Thomas F. Adkison, was killed in an auto accident.

Subsequent to the date of the accident, the appellant filed an action on the law side of the Houston County Circuit Court against the administrator of the estate of Abe Saliba, the son of Helen Saliba, and the driver of the car in which Thomas Adkison was a passenger. The insurer of the auto owned by Helen Saliba and driven by Abe Saliba, her son, had agreed to pay $10,000 as damages in satisfaction of said claim.

Both appellant and appellee agreed to accept this amount in settlement of their claim for damages against the administrator of the estate of Abe Saliba for the wrongful death of their son, Thomas Adkison.

There was also a stipulation incorporated in the proceedings that the cause of action for the wrongful death of Thomas Adkison existed by virtue of the provisions set out in Title 7, Section 119, Code of Alabama 1940, as Recompiled 1958.

Section 119, supra, provides, as follows:

"When the death of a minor child is caused by the wrongful act, or omission,

or negligence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in cases mentioned in the preceding section; or if the father and mother are both dead, or if they decline to bring the action or fail to do so within six months from the death of the minor, the personal representative of such minor may sue, and in any case shall recover such damages as the jury may assess; but a suit by any one of them for the wrongful death of the minor shall be a bar to another action, either under this section or under section 123 of this title."

Title 7, Section 118, Code of Alabama 1940, as Recompiled 1958, also provides:

"A father, or in case of his death or desertion of his family, or his imprisonment for a term of two years or more under a conviction for crime, or of his confinement in an insane hospital, or if he has been declared of unsound mind, the mother may sue for an injury to a minor child, a member of the family."

In deciding the question of whether or not the mother is entitled to one-half, all, or none of the proceeds from the settlement of a claim for the wrongful death of her minor son, we have concluded that we must first decide the question of who has the right of action—the mother or the father, before we can reach the question raised by the assignments of error.

The compelling reason for this conclusion is the case of Peoples v. Seamon, 249 Ala. 284, 31 So.2d 88, wherein the Supreme Court of Alabama had the following to say:

"When a minor child is killed by the wrongful act of another, and he leaves surviving his father, the damages recoverable are for the benefit of the father, where the suit is by the father personally or by an administrator [citations] unless the father has by desertion or disability ceased to perform the parental duty of maintenance, or become disqualified (Section 118, Title 7, Code),

as when the minor child has married and been emancipated. McWhorter Transfer Co. v. Peek, supra. It was said in Louisville & Nashville R. R. v. Bogue, 177 Ala. 349, 360, 58 So. 392, 393, 396: 'As now reconstructed in the new Code, it (now substantially as in section 119, supra), is evidently designed to furnish a complete system for all actions for the death of a minor child,' meaning when a parent survived.

"Those cases also hold that if the suit is by the administrator of the minor leaving a father in the exercise of parental care, he is acting as a quasi trustee for the father, and the recovery is not for the estate of the child nor his distributees. Therefore if the deceased child leaves such a parent, the suit is controlled entirely by section 119, supra, and section 123, supra, has no application. * * *"

"We adhere to the principle stated in our cases that when the death of a minor is wrongfully caused, and he leaves a parent surviving, who is not disqualified under section 118, section 119, and not section 123, supra, has application, and the damages recoverable are solely for the benefit of that parent, who may sue in his own name, or if he becomes administrator may sue as such for his sole benefit.

* * * * * *

"* * * and the result is that when a parent survives and is qualified, section 119 is the only available statute, and the recovery is solely for the benefit of that parent, * * *."

The Supreme Court, in the recent case of Daniel Construction Co. v. Pierce, 270 Ala. 522, 120 So.2d 381, confirmed the above enunciated principle, particularly as it applies to the disposition of the damages recoverable from such an action.

In the *Peoples case,* supra, the *Daniel case,* supra, and in all the other cases decided on the point in question, so far as we have been able to determine, the parents

were living together as man and wife. With the existence of this relationship, there would be no question about the father suing because he was the head of the household; nor would there be any question about the proceeds of the recovery going to the father for the same reason.

This is particularly true in view of the statement in Taylor v. City of Clanton, 245 Ala. 671, 18 So.2d 369, that:

"There is no right of action at common law for the death of a child, and the right to recover damages therefor is purely statutory. Section 119, supra, gave to the parents priority over a cause of action created by statute. [citations]."

■ The atmosphere surrounding the Alabama cases and Sections 118 and 119, supra, pertaining to the rights of parents to sue for the wrongful death of a minor child is highly charged with the common law principles of parental duty to maintain, support and care for children with the reciprocal right in the parent to the children's services. McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291.

■ This conclusion is bolstered because the father has first priority in filing suit as provided in Section 118, supra; and by virtue of Peoples v. Seamon, supra, is entitled to all of the proceeds recoverable in such an action.

It would seem then that the damages to be recovered would be compensatory.

■ This is not so, for the damages recoverable in an action authorized by Section 119, supra, are punitive only, McWhorter Transfer Co. v. Peek, supra; the idea being to punish for the wrongful death and to deter others from engaging in such conduct as would result in the wrongful deaths of others. Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77.

To us, the theory that the damages must be punitive rather than compensatory, does not comport with the premise of the cases and statutes that give the father the initial right of action for the wrongful death of the minor child because he is the head of the family unit, supports the family, educates the children and sees to their other needs; and by that same common law principle, he is also entitled to their services, affection and companionship.

The reasoning of the cited cases would be more acceptable if the conclusions were based on the father's loss, such as services, affection and companionship, because this seems to be the basis for the provisions in Sections 118 and 119, supra; but not so, says the Supreme Court—the damages are punitive only.

■ By virtue of the fact that the damages are punitive only, it would appear that the reasons for giving the father preference in bringing the cause of action for the wrongful death of his child are really not so meaningful, especially where the family unit is now headed by the mother rather than the father.

In the case at bar, the mother was granted a divorce from the father on the ground of abandonment and was awarded the custody, care and control of the two minor sons. Granted, the father was required to make support payments periodically for the benefit of the children. But, the head of the new family unit was the mother; she was working, making a good income—$6,116.54 net in 1968—maintaining the household in which she and the boys were living, and furnishing all the necessary care for them, such as medical, dental, school, clothing, entertainment, transportation and other personal needs. She was also providing the major part of the parental direction and care for the children.

■ All of which leads us to the conclusion that the deceased minor child, at the time of his death, was a member of the mother's family, i. e., the mother and the two sons made up the family unit, within the meaning of Section 118, supra, wherein it refers to a child being a "member of the

family," as opposed to the idea of the child being a member of the father's family.

It is also provided in Section 118, supra, that where the father has "deserted" his family, he is disqualified from bringing the cause of action, and the mother thereby becomes entitled thereto.

The question then arises in this case: At the time of the wrongful death of the minor child, had the father deserted his family within the meaning of Section 118, supra, where, several years prior to the minor's death, a court of competent jurisdiction had found the father had abandoned the family of which the child was a member?

We think the question should be answered in the affirmative.

The evidence presented to the trial court in this case clearly showed that the husband had abandoned his family in February of 1965, and from ought that appears, did not contribute to the children's support or do any other thing that would indicate an intention to return and resume his filial duties, until July 1965, when the Law and Equity Court of Houston County, Alabama entered a decree pendente lite requiring of him support payments for the children's benefit.

There was no evidence that there had been any effort at reconciliation and, again, from ought that appears from the evidence, the husband left the family, deserted them if you please, with no intent of returning or of supporting the children in any way, until ordered to do so by the court.

In the case of Southern Railway Co. v. Carlton, 218 Ala. 265, 118 So. 458, the Supreme Court had before it a question of whether the father had forfeited his right to sue for the wrongful death of a minor child because he had "deserted" his family within the meaning of the statute authorizing the suit, which is now Section 119, supra.

The evidence presented to the court to support the contention was that the father and child lived under the same roof, but the father had disowned the child as a bastard, and he did not contribute to the support of the child, nor the other children. The mother provided all of the support for the children.

The Supreme Court said there was evidence of desertion of the family by the father within the meaning of the pertinent statute.

In Darden v. Darden, 246 Ala. 525, 21 So.2d 549, the Supreme Court, in a case where a divorce was sought on the ground of abandonment, used the terms "abandonment" and "desertion" interchangeably as if there were no difference in the two terms, so far as the granting of a divorce on that ground was concerned.

In fact, the Supreme Court, in defining the term "abandonment" had this to say:

"Right to relief is premised upon the theory of a desertion or abandonment by the wife subsequent to the procurement of her divorce a mensa et thoro and then her later refusal of a proffered reconciliation.

\* \* \* \* \* \*

" \* \* \* Abandonment, in such legal sense, imports a willful desertion by one party of the other and involves a violation of marital duty by the abandoning spouse. \* \* \*

\* \* \* \* \* \*

"This holding, however, is not to indicate that a divorce a mensa et thoro will bar the deserting spouse from a right \* \* \*."

In Bean v. Bean, 273 Ala. 477, 142 So.2d 263, the Supreme Court again used the terms "abandonment" and "desertion" interchangeably. It said that where one spouse intentionally brings the cohabitation to an end by his misconduct, he is to be considered the "deserter." Then, while describing certain behavior ascribed to the wife said:

. "Such behavior on the part of the wife does not, in our opinion, constitute a constructive *abandonment* and *desertion* by her. * * *" (Emphasis added)

It appears to us that the Supreme Court considers the use of the terms "abandonment" and "desertion" to be practically synonymous so far as they are used to describe the relationship of the one member to the other members of the family.

We, therefore, conclude that the evidence presented to the trial court, including the decree of divorce for abandonment in favor of the wife, fully supports the theory that the husband forfeited his right to the cause of action for the wrongful death of his minor son, by deserting his family prior to the son's death, and that the mother was the proper party to exercise the right of action, and, moreover, she would be entitled to all of the $10,000; not just one-half, as decreed by the trial court. This aspect of our decision is based on Peoples v. Seamon, supra.

The contention that the trial court erred in admitting into evidence certain testimony over objection is without merit.

■ The trial court, in the particular instances mentioned, did not overrule the objections to the admission of the testimony in question, but remarked that he would allow the testimony because he was only going to consider legal evidence in making his decree anyway.

Such proceeding is authorized by Title 7, Section 372(1), Code of Alabama 1940, as Recompiled 1958.

■ There was no cross assignment of error by appellee questioning that aspect of the decree providing that the appellant had the right of action for the wrongful death of his minor son, but assignments of error three and four were sufficiently broad enough to permit this court to decide that question.

Consequently, this case is reversed and remanded to the trial court for it to enter a decree finding that the mother-appellee is entitled to bring the cause of action for the wrongful death of her minor son and that she is also entitled to receive all of the proceeds from any recovery in or settlement of the cause.

Reversed and remanded with directions.

ORDER AFTER REMANDMENT.

It is hereby ordered that the judgment in this Court entered on August 3, 1970, be amended to read as follows:

Whereas, the Supreme Court of Alabama, did on the 10th day of July, 1970, on a writ of certiorari to this Court, reverse and annul the decree of this Court wherein the decree of the Circuit Court of Houston County, Alabama, In Equity, was reversed and annulled and remanded to the Circuit Court, in Equity; and

Whereas, the Supreme Court of Alabama on such writ of certiorari did remand the cause to this Court for further proceedings.

It is therefore considered by the Court in accordance with the opinion and judgment rendered by the Supreme Court on July 10, 1970, 239 So.2d 562 that in the record and proceedings of the Circuit Court there is manifest error only as to that part of the decree of the Circuit Court, In Equity, which ordered and adjudged that the appellant and the appellee shall share equally in the proceeds from the prosecution or settlement of suit or claim for damages for the wrongful death of Thomas F. Adkison.

It is, therefore, ordered, adjudged and decreed by the Court that the part of the decree of the Circuit Court, in Equity, which ordered, adjudged and decreed that Hollan S. Adkison is entitled to maintain the suit filed in the Circuit Court of Houston County, Alabama, against A. B. Clark, Sheriff of Houston County, Alabama, as administrator of the Estate of Abe Emory Saliba, deceased, for damages for the wrongful death of the said Thomas F. Adkison be and the same is hereby affirmed.

It is further ordered, adjudged, and decreed that the part of the decree of the Circuit Court, in Equity, which ordered that the plaintiff, Theresa Adkison and the defendant, Hollan S. Adkison, shall share equally, share and share alike, in the proceeds or benefits from the prosecution or settlement of the suit or claim for damages for the wrongful death of Thomas F. Adkison be and the same is hereby reversed and annulled; and the cause is hereby remanded to the Houston County Circuit Court, In Equity, with directions to enter a decree that the defendant, Hollan S. Adkison, is entitled to receive all the benefits or proceeds from the prosecution or settlement of the suit or claim for damages filed against A. B. Clark, Sheriff of Houston County, Alabama, as administrator of the Estate of Abe Emory Saliba, deceased, for damages for the wrongful death of Thomas F. Adkison.

. It is further ordered, adjudged, and decreed that the appellee, Theresa Adkison, pay the costs of appeal in this Court and in the Court below for which costs let execution issue.