279 So.2d 422

**Joe Ed MAGNUSSON**

**v.**

**Clinton D. SWAN.**

**SC 108.**

Supreme Court of Alabama.

June 7, 1973.

152

Hare, Wynn, Newell & Newton, Birmingham, for appellee.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellant.

FAULKNER, Justice.

Clinton David Swan, a United States Air Force colonel, brought an action for the wrongful death of his daughter, Susan Swan, age 18 years, under Title 7, § 119, Code of Alabama 1940, Recompiled 1958. At the time of her death Susan was a student at the University of Tennessee. The suit was filed in the Circuit Court of Jefferson County and was tried before a jury. At the conclusion of the trial, the jury returned a verdict in favor of Swan and against Joe Ed Magnusson in the amount of $50,000. Judgment by the court in accordance with the jury verdict was duly entered. Magnusson filed a motion for new trial which was overruled by the trial court. He appeals to this Court to set aside the jury verdict and judgment of the trial court. Magnusson argues three alleged errors which, in substance are improper remarks by counsel for Swan to the jury in his opening and closing statements, and overruling the motion for new trial. The only ground in the motion argued was alleged excessive damages.

The facts adduced at the trial reveal that on January 20, 1968, Joe Ed Magnusson, a practicing dentist with offices in Huntsville, Alabama, picked up his girl friend, Miss Stutts, around noon. The record does not state where he picked her up. Subsequently, they drove to Lloyd's Restaurant located south of Mountain Brook on U. S. Highway 280 in Shelty County. There the two of them dined. After dinner Magnusson and Miss Stutts drove north on U. S. 280 towards Birmingham and approached the expressway in the vicinity of Mountain Brook. He exited the expressway and drove to a grocery store in Mountain Brook Village. When he returned to the expressway and made an entrance thereon, he discovered he was southbound. He wanted to go north to Birmingham. He did not know where he had made the wrong entrance to the expressway. He slowed his speed and began to seek a place to make a left turn across the median to return to the northbound traffic lanes. The place he selected was not a designated cross-over. It was a short distance north of an intersection providing for interchange of traffic. The time now was approximately 6:00 P.M. It was dark. The road was dry. Magnusson, now in the left lane of southbound expressway traffic, said he gave a left turn signal, slowed down and was in the process of turning left when he was struck from the rear by a southbound vehicle. In that collision young Susan Swan suffered severe bodily injuries from which she died on January 21, 1968.

Susan was visiting with friends in Birmingham. At the time of the accident she was a passenger in an automobile driven by Stephen C. Puckett. She was sitting on the rear seat, on the left side, when the two automobiles collided. Puckett had entered the expressway from Hollywood Blvd., headed south. As he proceeded to the bottom of the entrance ramp to the expressway, there was a small car ahead of him. He pulled around the car and entered the left traffic lane. His car reached a speed of 50 to 55 miles per hour. The expressway speed limit is 55 miles per hour. He saw the Magnusson car in his lane of traffic when he was 50 to 75 feet from it. He applied his brakes, which held, and attempted to drive to the right of the Magnusson car. His car skidded and collided with the rear end of the Magnusson car. The point of impact on his car was the left side where Susan was sitting. At the time of the impact Puckett estimated his speed at about 25 miles per hour. The length of skid marks leading to the point of impact was estimated to be 50 feet.

The first alleged error in this case arises out of remarks by Swan's counsel in his opening statement to the jury:

"MR. THOMPSON: * * * Now, this accident happened back in January 1968 * * * when Susan Swan was

**154**

killed * * *. [H]er daddy, Col. Swan was flying combat in Southeast Asia—

"MR. PETERSON: .I object to that.

"THE COURT: I sustain that. That doesn't have anything to do with what he was doing in Asia.

"MR. PETERSON: At this time, the Defendant moves for a mistrial as that is a prejudicial statement.

"THE COURT: Ladies and Gentlemen, of course opening statements by attorneys, closing statements by attorneys, representing both sides is not evidence in this case. I charge you that you are not to consider that last statement in any wise what the Col. [sic] was doing. It has no place in this lawsuit. Rub it out from your minds and do not consider it in the slightest. I believe you will do that. I overrule your motion for a mistrial."

■ The trial court having sustained the defendant's objection and having instructed the jury to "rub it out from your minds and do not consider it in the slightest", the question is whether the statement by plaintiff's counsel was of such a character that any harmful effect was ineradicable. We are of the opinion that the prompt action of the trial judge in instructing the jury to disregard it eradicated any harmful effect of the counsel's statement. American Rubber Corp. v. Jolley, 260 Ala. 600, 72 So.2d 102 (1954); Smith v. Reed, 252 Ala. 107, 39 So.2d 653 (1949). On appeal to this court we should be fully convinced that the statement of counsel is of such a highly prejudicial character that prompt and repressive measures by the trial judge will not eradicate any harmful effect such statement may be said to produce. From a careful reading of this record we are not so convinced. Alabama Great Southern R. Co. v. Swain, 248 Ala. 535, 28 So.2d 714 (1947), and cases cited therein; Louisville & Nashville R. Co. v. Sullivan, 244 Ala. 485, 13 So.2d 877 (1943).

The appellant next alleges error in that counsel for plaintiff argued compensatory damages in his closing argument to the jury:

"MR. NEWELL: * * * Now, we have asked you for $100,000 in this case. In my opinion that is a satisfactory amount. I think that is an amount that ought to be awarded by this jury. It won't pay for this young lady's life.

"MR. PETERSON: We object to that argument, Your Honor, and ask for a mistrial based on that argument.

"THE COURT: Well, Ladies and Gentlemen of the Jury, I will tell you at the proper time, of course, that arguments of counsel are not evidence in the case, and you are to decide this case upon the evidence, and I do sustain your objection to his statement there. Do not consider it, Ladies and Gentlemen of the Jury, in awarding a verdict in this case. Overrule your motion for a mistrial.

"MR. PETERSON: We except.

"MR. NEWELL: Our law is not compensatory. * * * It is punitive, not compensatory."

No grounds were stated for the objection. We are being most liberal by treating the objection as being an argument for compensatory damages in a wrongful death action which he could not make. Hardin v. Sellers, 270 Ala. 156, 117 So.2d 383 (1960). Counsel for the plaintiff hastened to add that any damages were punitive. The trial court in his oral charge to the jury correctly stated the element of damages in this case:

"THE COURT: * * * Ladies and Gentlemen of the Jury * * * damages provided under this statute are punitive damages * * * and are not compensatory damages. * * * [P]unitive damages are by way of punishment * * * imposed for the preservation of human life and as a

deterrent to others to prevent similar wrongs."

■ The court left no doubt as to the character of the damages. Mobile Light & R. Co. v. Nicholas, 232 Ala. 213, 167 So. 298 (1936). We are also of the opinion that the court's oral charge on punitive damages eradicated any prejudice from the alleged improper argument in the following statements by plaintiff's counsel in his closing argument:

(1) "If we had a railroad man here and we were trying this case with his legs off, then we could put up on that board what he would have earned in the future and his loss of services to his company."

(2) "The greatest personal injury a man can have is death. That is just— that's the supreme injury. Certainly, Colonel Swan would rather have picked up a telephone and [heard] somebody say: 'Susan has been in an automobile accident and has lost two legs' rather than—"

(3) "Now, in America and in our Western culture, the sacredness of life probably is held above all else. We don't sacrifice people like they do in Viet Nam, say, for example. You take a little child, and you nurture it, and you raise it and look out for it."

(4) " 'The damages 'tis true go to the estate of the party slain and in effect are compensatory; but this does not change the great purpose of the—' "

■ The final alleged error argued by appellant was that the verdict and judgment of $50,000 damages was excessive. Damages recoverable for the death of a minor child under Title 7, § 119, Code of Alabama 1940, Recompiled 1958, are entirely punitive and are based on the culpability of the defendant and the enormity of the wrong, and imposed for the preservation of human life. Crenshaw v. Alabama Freight, Inc., 287 Ala. 372, 252 So.2d 33 (1971); Mobile Light & R. Co. v. Nicholas, supra.

■ While juries, in the assessment of punitive damages are given a discretion in determining the amount of the damages, this discretion is not an unbridled or arbitrary one, but a legal, sound, and honest discretion. Due regard should be had to the necessity of preventing similar wrongs. Briefly, the punishment by way of damages is intended not only to punish the wrongdoer, but also, to deter others similarly minded. Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696, 61 A.L.R.2d 1346 (1958); Adkison v. Adkison, 46 Ala.App. 191, 239 So.2d 555 (1970).

This court cannot say that the jury was not justified in concluding that slowing down and making a left turn off an expressway during the hours of darkness at a place where there is no designated crossover was an enormous wrong and was a culpable act on the part of the defendant and was in violation of Title 36, § 58(2) and § 58(10), Code of Alabama 1940, Recompiled 1958.[1] Expressways are designed

---

1. "§ 58(2). Minimum speed regulation; establishment of minimum speed limit. —No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.

"Police are hereby authorized to enforce this provision by direction to drivers, and in the event of refusal or failure to obey this provision after such direction, the continued slow operation by a driver shall be a misdemeanor.

"Whenever the director of public safety and the highway director, with the approval of the governor, shall determine upon the bases of engineering and traffic investigation that a minimum prima facie speed limit is desirable, they may declare a reasonable and safe prima facie minimum speed limit which shall be effective at all times or during such times as may be determined when appropriate signs giving notice thereof are erected at sufficient intervals as to inform the public, and when posted it shall not be necessary for a police officer to direct a driver to in-

for fast travel. Exits from and entrances to expressways are designed and placed for safety of the motorist and free flow of traffic. Exiting therefrom should be done at designated places not only for the safety of the exiting motorists but also for other motorists as well.

■ There is nothing in the record tending to show the verdict excessive. This Court should not capriciously set aside a jury verdict without a valid or legal reason. The trial judge saw and heard the witnesses, and declined to set aside the verdict or to suggest a reduction thereof, as he might have done. Mobile Electric Co. v. Fritz, 200 Ala. 692, 77 So. 235. No valid or legal reasons are shown in the record why this Court should usurp the verdict of the jury and the judgment of the trial judge and hold the damages excessive.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, and MADDOX, JJ., concur.

crease his speed, as a prerequisite to arresting such driver. * * *

"§ 58(10). Driving on divided highways.—Whenever any highway has been divided into two roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening in such physical barrier or dividing section or space or at a crossover or intersection established by public authority. * * *"