300 So.2d 354

**Charlotte EICH, as Mother of her unborn child, Deceased**

**v.**

**The TOWN OF GULF SHORES, Alabama, et al.**

**SC 779.**

Supreme Court of Alabama.

Sept. 12, 1974.

Joseph J. Boswell, Patrick M. Sigler, and B. Nicholas Kearney, Mobile, for appellant.

Donald F. Pierce and Benjamen T. Rowe, Mobile, for appellees.

JONES, Justice.

This appeal comes to us from the Circuit Court of Baldwin County as a result of the granting of a motion to dismiss appellant's complaint on the ground that there is no cause of action for prenatal wrongful death of a stillborn fetus in Alabama.[1]

We hold that such an action for prenatal injury resulting in the death of an eight and one-half month old fetus can be maintained under Tit. 7, § 119, Code of Alabama 1940 (Recomp.1958). To deny recovery where the injury is so severe as to cause the death of a fetus subsequently stillborn, and to allow recovery where injury occurs during pregnancy and death results therefrom after a live birth,[2] would only serve the tortfeasor by rewarding him for his severity in inflicting the injury. It would be bizarre, indeed, to hold that the greater the harm inflicted the better the opportunity for exoneration of the defendant. Logic, fairness and justice compel our recognition of an action, as here, for prenatal injuries causing death before a live birth.

This action was filed by the mother of the fetal child, alleging that the father had abandoned the child and thus had forfeited any right of action which he would normally have been entitled to maintain under the statute. Crenshaw v. Alabama Freight, Inc., 287 Ala. 372, 252 So.2d 33 (1971); Ex parte Roberson, 275 Ala. 374, 155 So.2d 330 (1963); McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291 (1936).

The basis of her complaint is that on March 2, 1974, she was involved in an automobile accident on Alabama Highway 59 South, less than a mile from Gulf Shores, Alabama. The driver of the other vehicle involved in the accident was Edgar Eugene Kinsey, a policeman for the Town of Gulf Shores. At the time of the accident, Mrs. Eich was eight and one-half months pregnant and, as a result, she suffered injuries which culminated in the death of her fetal child who was stillborn. She also alleges that the child's death was the proximate result of the negligence of Kinsey while he was acting within the line and scope of his authority for the Town of Gulf Shores.

Alabama's wrongful death statute, Tit. 7, § 119, Code of Alabama 1940 (Recomp.1958), states that the father, or the mother in the case of death or imprisonment of the father or desertion by the father, may maintain a wrongful death action on behalf of the minor child caused by the wrongful act, omission, or negligence of any person. Basically, this section is designed to furnish a complete system for all actions for the death of a minor child. Adkison v. Adkison, 46 Ala.App. 191, 239 So.2d 555 (1970), reversed on other grounds, 286 Ala. 306, 239 So.2d 562

---

1. The suit as originally filed named the Town of Gulf Shores and its police officer driver parties defendant. The defendants' original defenses included governmental immunity as to both the municipality and the individual defendant. Subsequently, the plaintiff waived her claim against the Town and the individual defendant waived his defense of governmental immunity.

2. The reference here is to the two recent cases of Huskey v. Smith, 289 Ala. 52, 265 So.2d 596 (1972) and Wolfe v. Isbell, 291 Ala. 327, 280 So.2d 758 (1973), which are discussed more fully in the opinion.

(1970). Furthermore, the damages recoverable under this section are entirely punitive and are based on the culpability of the defendant and the enormity of the wrong, and are imposed for the preservation of human life. Magnusson v. Swan, 291 Ala. 151, 279 So.2d 422 (1973).

■ Appellee's principal position is that, as a matter of substantive statutory law, live birth is a prerequisite to liability for wrongful death in Alabama. Appellee would have us construe Tit. 7, § 119, Code of Alabama 1940 (Recomp.1958), strictly and as noninclusive in relation to a fetus. He grounds this contention on the assertion that it is the legislative intent of this section—the legal criterion for statutory interpretation—which is supportive of his position. However, we are not inclined to accept this argument. To the contrary, to allow recovery where the fetus is stillborn is essential to the effectuation of legislative intent. It is a deeply engrained principle of Alabama jurisprudence that the paramount purpose of our wrongful death statutes (§§ 119 and 123) is the preservation of human life.[3] So pervasive was this dominant theme that our Court, as early as 1912, corrected the misapprehension that compensatory damages were allowable under the statutory phrase "such damages as the jury may assess" in § 119, while only punitive damages were allowable under the same phraseology in § 123. Louisville & Nashville R.R. Co. v. Bogue, 177 Ala. 349, 58 So. 392 (1912).

The Court in *Bogue*, in giving a consistent interpretation to the two statutes, observed:

"Each section relates to homicides and confers a right of action unknown to the common law, and the language of each is identical with respect to the nature of the damages that may be recovered. 'Such damages as the jury may assess' cannot by any rational rule of construction mean punitive damages in the one, and compensatory damages in the other; and to so hold would in our opinion be simply an act of judicial legislation. The entire language of the statute follows as closely as possible the language of the older statute (section 2486) for the prevention of homicides; and the damages authorized under that statute have always been held to be punitive only."

It was to implement this legislative intent, then, that the Alabama Supreme Court, through its interpretation of the phrase "such damages as the jury may assess," provided vindication for the tortfeasor's wrongful conduct. To deny recovery would sanction the tortfeasor's wrongful act and would clearly negate the primary objective of the statute.

■ We recognize the cases cited by appellee construing the term "minor child" as not including a fetus,[4] but are not persuaded that such a strict construction here would insure the necessary growth of the law in this vital area and the individual justice of the case before us. Also, we are not persuaded by appellee's separation of powers argument, nor by his implication that we would be judicially amending a legislative enactment.

In fact, by allowing recovery in an action of this nature, we are merely extending our judicial prerogative in concert with prior decisions of this Court. This Court decided in 1972 in Huskey v. Smith, 289 Ala. 52, 265 So.2d 596 (1972), that there existed in Alabama a cause of action for

3. See Alabama Pattern Jury Instructions— Civil, 11.18 Damages (1974).

4. Leccese v. McDonough, 279 N.E.2d 339 (Mass., 1972); McKillip v. Zimmerman, 191 N.W.2d 706 (Iowa, 1971); Stokes v. Liberty Mutual Insurance Co., 213 So.2d 695 (Fla., 1968); and Norman v. Murphy, 124 Cal.App. 2d 95, 268 P.2d 178 (1954). It is interesting, and not without significance, that none of these cases are based on wrongful death statutes allowing punitive damages only. Typically, the Florida statute allows only compensatory damages to the parent for the loss of services of the minor child.

the wrongful death of a child which was viable at the time of the injury and which was born alive. And in the following year in Wolfe v. Isbell, 291 Ala. 327, 280 So.2d 758 (1973), our Court recognized that the concept of viability was irrelevant where wrongful death of a fetus born alive is concerned. Neither those two decisions nor the one we decide today is, in our view, an usurpation of the legislative function for it is often necessary to breathe life into existing laws less they become stale and shelfworn. This is not a confrontation with another branch of our government, but rather a unity of effort in order that existing law may become useful law to promote the ends of justice. Indeed, as we have already observed, it was by judicial interpretation, and not the express terms of the wrongful death statutes, that punitive damages only are allowable in such cases, and this for the avowed aim of accomplishing the primary purpose of the legislative intent—the preservation of human life.

■ Aside from his principal argument, appellee states that in an action for a prenatally induced death, live birth should be utilized as a cut-off point because it is inappropriate in every such case to depend upon a punitive, quasi-criminal wrongful death statute. We feel that this argument is not persuasive because it is illogical to allow liability to depend on whether death from fatal injury occurred before or after live birth. Reconciliation of the proposition that if death occurred after live birth a cause of action exists, but if death occurs prior thereto a cause of action does not exist, is extremely difficult at best. The proposition's inconsistency is best exemplified in the situation involving the death of twins who are wrongfully injured during pregnancy. To allow recovery to the one born alive, who subsequently dies, and to deny recovery to the stillborn who was injured in the same accident is obviously ludicrous. Stidam v. Ashmore, 109 Ohio App. 431, 434, 11 Ohio Op.2d 383, 385, 167 N.E.2d 106, 108 (1959). To balance the right to maintain the action upon whether the child fatally injured by the negligence of the defendant is born dead or alive is unjust and illusory. Therefore, because the punitive nature of our wrongful death statute demands the punishment of the tortfeasor, we do not believe that appellee's appropriateness argument is a valid one.

As the U. S. Supreme Court stated in Roe v. Wade, 410 U.S. 113, 162, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), some states have recently permitted the parents of a stillborn child to maintain an action for wrongful death because of prenatal injuries, the theory being that such an action is one to vindicate the parents' interest in the loss of the child. The Court further went on to say that, at least subsequent to the end of the first trimester of pregnancy, the state has a valid interest and duty in protecting such prenatal life, so long as that interest does not conflict with that of an individual's right to privacy. This is so because a potential future human life is present from the moment of conception and the state's interest and general obligation to protect life thus extends to prenatal life.

■ Appellee also contends that there exist several policy reasons why a cause of action should not exist without the prerequisite of live birth. These reasons include: the possibility of fraudulent claims; the problem of proof of causation; and the fear of double recoveries. As to the possibility of fraudulent claims, we believe that the interest of the plaintiff in having a cause of action far outweighs the theoretical possibility that recognition of this cause of action will open the door to fraudulent litigation. Concerning the problem of causation, we are not persuaded by the argument of appellee that a clear remedy for an injustice should be denied because a wrong is not clearly prone to proof. We think that, in light of modern medical technology, proof of the cause of death can be made by expert witnesses. Under our established law in these cases, a verdict

based on such expert testimony would not rest on pure speculation, guesswork or conjecture. At any rate, once we accept the basic premise that a fetus is a potential human life at the time of the injury, we feel that the substantive rights resulting from wrongful death must be protected, regardless of the inherent practical difficulties. Therefore, we do not feel that the supposed difficulty in proof of causation should be a bar to bringing this action. In fact, the difficulty, if any, of proving causal connection should prompt greater lenience in affording a remedy rather than denying justice. Moreover, since the burden of proof is on the plaintiff, any increased difficulty of proof of causation should inure to the benefit of the defendant.

■ Finally, appellee's argument that the allowance of such an action would allow the plaintiff the possibility of a double recovery is without merit since there has been, in the situation before us, an injury to two different persons for which the tortfeasor should be held to answer; namely, the compensatory relief due the plaintiff for her physical and mental injuries, and the punitive relief due the plaintiff derived through her right to maintain the wrongful death action for the loss of her minor child.

Though not here determinative, we note in passing that Tit. 22, § 24, Code of Alabama 1940 (Recomp. 1958), which prescribes that death certificates must be registered for all fetal deaths where the fetus has advanced to or beyond the twentieth week of uterogestation, is expressive of a public interest in fetal deaths.

■ Consequently, due to the pervading public purpose of our wrongful death statute, which is to prevent homicide through punishment of the culpable party and the determination of damages by reference to the quality of the tortious act, we are again extending out judicial prerogative as was done in *Huskey* and *Wolfe* to hold

that the parents of an eight and one-half month old stillborn fetus are entitled to maintain an action for the wrongful death of the child.

Reversed and remanded.

HEFLIN, C. J., and BLOODWORTH, MADDOX and FAULKNER, JJ., concur.

MERRILL, COLEMAN, HARWOOD and McCALL, JJ., dissent.

MERRILL, Justice (dissenting):

The majority opinion sets, for the first time in Alabama, different standards in our wrongful death and homicide statutes. The opinion states that "due to the pervading public purpose of our wrongful death statute, which is to prevent homicide through punishment of the culpable party and the determination of damages by reference to the quality of the tortious act, we are again extending our judicial prerogative as was done in *Huskey* and *Wolfe* to hold that the parents of an eight and one-half month old stillborn fetus are entitled to maintain an action for the wrongful death of the child."

I do not see this holding as an "extension" of Huskey v. State, 289 Ala. 52, 265 So.2d 596, and Wolfe v. Isbell, 291 Ala. 327, 280 So.2d 758, but a tremendous jump and a pronounced reversal of the previous holdings of our appellate courts.

I concurred in *Huskey* and although I did not participate in *Wolfe,* I agree with its holding. But the important fact present in those two cases is absent here. In *Huskey,* the child "was born alive." In *Wolfe,* decided on the pleadings, the complaint showed that "the child was born alive and shortly thereafter died because of the prenatal injury."

Here, the fetal child was stillborn. Our wrongful death statute, Tit. 7, § 119, begins "When the death of a minor child is caused by the wrongful act, * * *." The stillborn fetus was not a minor, had not lived after birth and no cause of action

accrued to it. The same law is quoted in *Wolfe* from restatement (Second) of Torts, § 869, pp. 174–182, as follows:

" '(1) One who tortiously causes harm to an unborn child is subject to liability to the child for such harm if it is born alive.

" '(2) If the child is not born alive, there is no liability unless the applicable wrongful death statute so provides.' Tent.Draft, supra, at 174. See 47 ALI Proceedings, 371–377 (1970)."

Our homicide statutes have been so construed in two decisions. In Singleton v. State, 33 Ala.App. 536, 35 So.2d 375, the Court of Appeals, per Harwood, J., said:

"In infanticide cases an element additional to the required elements of the usual homicide case must be established by the State beyond a reasonable doubt, namely that the deceased babe was born alive, it being axiomatic that one cannot kill something already dead. Rough and rule of thumb tests were applied by the earlier cases, and the question of the viability of the child seems to have revolved around whether the child breathed and had a circulation independent of its mother. (Citations omitted.)"

On this phase of the case, the court said "it is our conclusion that the State met the burden of proof cast upon it to establish that the infant in the present case was born alive." See also, Weaver v. State, 24 Ala.App. 208, 132 So. 706.

To convict a person for murder or manslaughter of a newly born baby, the evidence must show that it was born alive. Yet, the majority opinion holds that a suit can be brought where the child was not born alive under the wrongful death statute, which has as one of its purposes the prevention of homicide.

I respectfully dissent.

COLEMAN, HARWOOD and McCALL, JJ., concur.