724 So.2d 698 (1999)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Karen IRVEN, Appellee.
No. 97-05373
District Court of Appeal of Florida, Second District.
January 22, 1999.
David H. McClain of McClain & Associates, P.A., Tampa, for Appellant.
Sylvia H. Walbolt, Peter J. Winders, and J. Kevin Carey of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for Appellee.
CAMPBELL, Acting Chief Judge.
In this "whistle-blower" action, appellant, Department of Health and Rehabilitative Services (HRS), challenges the final judgment entered after a jury verdict in favor of its former employee, appellee, Karen Irven. For the reasons that follow, we reverse.
Appellee Irven was formerly employed as a Child Protective Investigator with HRS. She was discharged from her employment effective August 25, 1994, and subsequently filed her "whistle-blower's" civil action complaint pursuant to section 112.3187, Florida *699 Statutes (1993), alleging she was improperly discharged in retaliation for her disclosure of alleged HRS wrongdoings.
HRS raises three issues in this appeal:
I. Whether section 112.3187, Florida Statutes (1993), the "Whistle-Blower's Act," waives sovereign immunity under Article X, Section 13, of the Florida Constitution.
II. Whether Irven's internal memoranda constituted whistle-blowing under section 112.3187, Florida Statutes.
III. Whether Irven's election of remedies under section 112.3187(11) and section 447.401, Florida Statutes, foreclosed her complaint for and evidence of retaliation for whistle-blowing.
While it appears that the third issue raised here by HRS might have merit, our careful review of the record leaves us unconvinced that the "election of remedies" issue was properly presented to the trial court and thereby preserved for our review on this appeal.
In regard to the first issue raised by HRS, it is clear to us that the "Whistle-Blower's Act," sections 112.3187-112.31895, Florida Statutes (1993), clearly and unequivocally waives sovereign immunity for the purposes of the "Remedies" and "Relief" afforded by subsections 112.3187(8) and (9). It is equally clear to us, however, that because any waiver of sovereign immunity must be clear and unequivocal (see Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla.1958)), the waiver must be limited to the acts or conduct clearly and unequivocally prohibited or protected against. Therefore, the waiver must be strictly construed and applied. A protection against acts not clearly delineated as prohibited or protected must not be implied. We, therefore, will consider the first issue raised by HRS in regard to the manner in which it impacts on the second issue raised.
Appellee Irven's reports disclosing information for which she alleges she was discharged from employment grew out of a case of alleged child abuse involving a child (S.S.) concerning whom a petition for dependency was originally filed on October 20, 1993, in the Circuit Court of the Fourth Circuit in and for Nassau County, Florida. Subsequently, both S.S.'s mother, while represented by counsel, and HRS petitioned the Nassau County Court on the basis of rule 8.205(b), Florida Rules of Juvenile Procedure, to transfer the case to the Circuit Court for the Tenth Circuit in and for Polk County, Florida. On January 21, 1994, without objection, the Nassau County Court transferred the case to Polk County. At the time of the transfer of venue, the mother of S.S. resided in Polk County. The acts that led to the dependency petition occurred in Osceola County, and S.S. was then in the temporary care of her maternal grandparents in Nassau County. It was only upon the transfer of the S.S. dependency proceeding to Polk County that appellee Irven became involved as a Child Protective Investigator for HRS. When Polk County received the transfer, Irven complained to Roland Reis, an HRS attorney, about the propriety of the Polk County venue. Reis then ex parte contacted the office of Judge Davis in Polk County. Reis concluded from his contact with Judge Davis's office that Judge Davis was not inclined to "bounce the case back" to Nassau County, and therefore the case would be kept in Polk County.
Irven then began a series of intradepartmental complaints about the handling of the S.S. dependency proceeding, focusing mainly on the change of venue from Nassau County to Polk County. We will subsequently discuss in greater detail the various complaints made by Irven, HRS's response, and Irven's ultimate discharge. For the purpose of this appeal, we accept, as the jury found, that Irven's discharge was in reprisal for her actions in the S.S. case. That, however, is not the determinative issue on this appeal. The determinative issue is whether the acts and communications by Irven were "whistle-blower" acts, as defined and protected by the "Whistle-Blower's Act." If they were not, and we do conclude they were not, it does not matter that she was discharged in reprisal for them. Only reprisal or retaliation for the acts defined by the statute is protected against and for which "Remedies" and "Relief" are afforded.
*700 The "whistle-blower" acts of employees that are afforded protection are clearly enunciated and are statutorily defined as follows:
112.3187 Adverse action against employee for disclosing information of specified nature prohibited; employee remedy and relief.
....
(2) LEGISLATIVE INTENT.It is the intent of the Legislature to prevent agencies or independent contractors from taking retaliatory action against an employee who reports to an appropriate agency violations of law on the part of a public employer or independent contractor that create a substantial and specific danger to the public's health, safety, or welfare. It is further the intent of the Legislature to prevent agencies or independent contractors from taking retaliatory action against any person who discloses information to an appropriate agency alleging improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee.
(3) DEFINITIONS.As used in this act, unless otherwise specified, the following words or terms shall have the meanings indicated:
....
(e) "Gross mismanagement" means a continuous pattern of managerial abuses, wrongful or arbitrary and capricious actions, or fraudulent or criminal conduct which may have a substantial adverse economic impact.
....
(5) NATURE OF INFORMATION DISCLOSED.The information disclosed under this section must include:

(a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.

(b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.
(Emphasis supplied.)
In the light of these statutory criteria, we now examine the actions of Irven that, we conclude, she mistakenly considers protected by the "Whistle-Blower's Act."

The Alleged Whistle-Blowing Acts
In her amended complaint for injunctive relief and damages, Irven identifies four actions or communications in which she alleges she "blew the whistle" on HRS. It is clear, however, that all of her alleged "whistle-blowing" activity grew out of and was premised upon what she alleges were her first and second acts of "whistle-blowing." If those two actions do not fall within the statutory definition of "whistle-blowing," none of her acts do.
Her first alleged act of "whistle-blowing" took the form of an intraoffice memorandum dated February 7, 1994, from Irven to Roland Reis and Maria Mezzarella, attorneys, and Patricia K. Lawler, OPA (Operations Program Administrator). This memo was written after Irven's complaint to Reis about the change of venue of the S.S. case and after Judge Davis's office had informed Reis that the venue of S.S. would not be "bounced back" to Nassau County. Irven's memo of February 7, 1994, states, after having critical S.S. matters redacted, as follows:
Polk County has no jurisdiction in the [S.S.] case for the following reasons:
1. Roland Reis stated he had spoken with Judge Davis on 2/2/94, and Judge Davis stated he had not received the order transferring the case. It appears HRS Polk County has prematurely accepted a case which didn't happen in Polk County.
2. The report came in 10/12/93. The investigation was done in Nassau County.
3. The Motion to Dismiss states # 2 that the child and mother usually reside in Polk County. By Nassau County's HRS own residence research, this appears to be untrue, copy of past residences enclosed.
4. The incident occurred in Osceola County, Lucaya Drive, Kissimmee (Poinciana).

*701 5. Law enforcement jurisdiction is Osceola County. Information was forwarded to Osceola County Sheriff's Office by Nassau County. Officer [name stricken], from Fernandina Beach, Nassau County, has also been involved in the case.
6. The child was sheltered with the grandmother, [name stricken], in Nassau County. The mother stated she is not being allowed visitations by the grandmother.
7. Petition was brought in Nassau County.
8. Rule 8.530 Transfer of Cases # b.......after adjudication...... When adjudication withheld .... when plan under Rule 8.760 has been accepted, or before adjudication where witnesses are available......located the .... residence of the child.....best interest of the child....transfer within 5 days.
The Cause was considered on the 19th day of January, 1994; ordered on 21st day of January, 1994. This doesn't appear transferred within 5 days. Also the child resides in Nassau County and the witnesses are in other counties.
I don't feel I can adequately investigate this case with all the principles, [sic] except the mother out of the county and the long lapse of time from when the incident occurred, and my being assigned.
There appears to be a question as to whether the child should have been sheltered and a petition brought. The child was placed in shelter in Nassau County. To not file a petition now, would create a liability question which I don't feel I, nor Polk County HRS, should have to bear.
Irven's second alleged "whistle-blowing" action took the form of a letter dated February 20, 1994, from Irven to her immediate supervisor, Linda Fuchs. That redacted letter states as follows:
I was informed on 2/11/94, by you, that the [stricken] case was accepted by the Tenth Judicial Circuit Court of Polk County, Fl. Cynthia Halla, CPI Nassau Co., submitted a Detention Petition in the interest of [stricken], placing the child in shelter with the maternal grandmother, [stricken], Fernandina Beach, Fla., Nassau Co. The Order for Detention was signed on October 20, 1993. A Petition for Dependency was submitted by Ms. Halla and the arraignment hearing was held on 1/5/94. The mother was present and entered a denial. Pretrial was scheduled for 1/19/94. The Order on the Motion Transferring Jurisdiction was signed 1/21/94.
The Abuse Report printed on 1/31/94 by John Chabott, CPIS, states that Ms. Halla is concerned for the child's safety in the grandmother's care. Please refer to the FPSS case # XX-XXXXXX, CI1672.
It appears HRS Polk County has prematurely accepted this case in which the child has been placed at risk by Nassau County's poor placement of the child and their failure to rectify the situation.
Cynthia Halla submitted the petition. She had no objection in court to the petition being transferred to the Tenth Judicial Circuit Court of Polk Co. Therefore, Ms. Halla should have no objection to providing the guidance and the evidence to support her petition to the HRS legal department of Polk Co. I cannot defend or support Ms. Halla's petition in court. I have no first hand evidence, only hearsay from Ms. Halla which is not admissible in court. I cannot adequately investigate this case with all of the witnesses located out of the county. I cannot assess the safety, risk, or well-being of the child, located in Nassau Co., or act as the case manager. Ms. Halla would be able to do this, since she is located in the same county as the child.
Ms. Halla apparently feels that the grandmother, Ms. [stricken] is not an appropriate placement for the child. Since all the relatives are in Nassau Co., I recommend that Ms. Halla investigate a possible placement with one of these relatives.
I will staff the case with PS in Polk County, asking that they request courtesy supervision from HRS Nassau Co., if necessary.
The S.S. Dependency Proceeding
A Child Protection Team Case Summary best reveals how and why the proceedings *702 involving the child S.S. were begun. That case summary states in part as follows:
Reason for Referral:
This case was referred to the Child Protection Team (CPT) on 10/18/93 by Rhonda Sanderson, Fernandina Beach Police Department (FBPD). The referral was made pursuant to a report of sexual battery received by FBPD. Information obtained at that time was that [S.S.] lived in Orlando, Florida with her mother. The child came to Nassau County for a few weeks to visit her grandmother. While visiting [S.S.] told her grandmother of sexual abuse by her mother's boyfriend. The Department of Health and Rehabilitative Services (HRS) and the FBPD had been out to interview the child who gave history of digital penetration by her mother's boyfriend. The child's grandmother, Isabell [C.], called the child's mother and told her that the child would not be returning. The child's mother, Carol [J.], came to Nassau County and got the child to recant in front of the detective. She has since returned to Orlando, Florida. Further information obtained was that this child had been removed from her mother's care before. A request was made for the CPT to assist in interviewing this child and assessing the family situation.
....
Interview:
Limited information was gathered from Cindy Halla, Child Protective Investigator with HRS, on 10/19/93. She indicated that there were several priors involving this child and her mother. Her mother was reported to be a drug addict and a sibling of [S.S.'s] had been sexually abused by one of her mother's boyfriends. That sibling was reported to be in the custody of her biological father for the same reasons. [S.S.] was reportedly adjudicated dependent in the past.
....
Medical Examination:
A medical examination was done by Judith FitzGerald, D.O., CSAP medical examiner on 10/26/93. Her impressions were that the physical findings were consistent with genital trauma. Please refer to the medical report on file for further detail.
IMPRESSION:
Based on information gathered from interviews, it is this case coordinator's impression that [S.S.] was sexually abused by her mother's boyfriend. The child disclosed credible history of sexual abuse by Glenn to the FBPD and HRS. The child later recanted after having contact with her mother who is felt to be nonsupportive. At the time of the interview with this case coordinator the child again gave history of digital penetration by Glenn. The results of the medical examination appeared to be consistent with the history provided by the child.
RECOMMENDATIONS:
1. HRS and law enforcement should continue their investigation and proceed accordingly.
2. [S.S.] should be detained pending further investigation of the mother's situation by HRS and until she can demonstrate support for her daughter.
3. [S.S.] should be enrolled in counseling to help her deal with issues surrounding the abuse as well as other issues she is facing at this time.
4. [S.S.] should have no further contact with the offender.
While the case summary indicates that S.S. and her mother were living in Orlando at the time S.S. was sent to visit her maternal grandmother, they were in fact living in Loughman in Polk County.
A petition for dependency was filed in the Circuit Court, Fourth Judicial Circuit, in and for Nassau County, on October 20, 1993. On that same date, a shelter hearing was held in Nassau County and a Special Order for Detention was entered. As a result, on October 20, 1993, S.S. was continued in the custody of the maternal grandmother in shelter status. Arraignment was set for January 5, 1994. On that date, with all parties appearing and represented by counsel, the matter was scheduled for pretrial on January 19, 1994. In the meantime, the mother of S.S., represented by counsel, filed a motion to dismiss for lack of jurisdiction or, in the alternative, *703 to change venue to Polk County. That motion alleged that none of the alleged actions meriting dependency took place in Nassau County and that the mother and S.S. were both usually residents of Polk County. On January 18, 1994, HRS filed a response to the mother's motion to dismiss or change venue and a separate motion to transfer jurisdiction. In both of its filings, HRS concurred with the mother's suggestion that she and the child S.S. were both usually residents of Polk County and that the venue of the proceedings was therefore proper in Polk County. As a result of the hearing on January 19, 1994, and without objection, the Nassau County trial judge transferred jurisdiction to Polk County. It was immediately upon the transfer to Polk County and Irven's assignment to the case as a Child Protective Investigator that she began her departmental attack on the transfer and her assigned duties in regard to the case. Without detailing the other attacks and grievances filed by Irven in regard to the S.S. case, the matter was concluded in Polk County by an Order of Adjudication of Dependency and Protective Services Supervision entered by Judge Davis on October 3,1994. Based upon a motion by HRS, jurisdiction was transferred back to Nassau County. Those orders continued the placement of the legal custody of S.S. in the maternal grandparents and under the Protective Services Supervision of HRS.

Conclusion
It is clear to us that the acts Irven alleges as "whistle-blower" acts are not protected by the "Whistle-Blower's Act." To decide otherwise in the circumstances of this case would open every disagreement by an agency employee with the handling of a matter subject to judicial supervision and control to a "whistle-blower" action. We conclude such is not the intent of the Act. Irven's chief complaint was the transfer of venue. Yet rule 8.205(b), Florida Rules of Juvenile Procedure, contemplates exactly such a circumstance as occurred in this case. That rule provides:
(b) Transfer of Cases Within the State of Florida. The court may transfer any case after adjudication, when adjudication is withheld, when a stipulation under rule 8.325(d) has been accepted, or before adjudication where witnesses are available in another jurisdiction, to the circuit court for the county in which is located the domicile or usual residence of the child or such other circuit as the court may determine to be for the best interest of the child and to promote the efficient administration of justice. The transferring court shall enter an order transferring its jurisdiction and certifying the case to the proper court, furnishing all parties, the clerk, and the state attorney of the receiving court a copy of the order of transfer within 5 days. The clerk shall also transmit a certified copy of the file to the receiving court within 5 days.
In addition, section 47.122, Florida Statutes (1993), provides:
47.122 Change of venue; convenience of parties or witnesses or in the interest of justice.-For the convenience of the parties or witnesses or in the interest of justice, any court of record may transfer any civil action to any other court of record in which it might have been brought.
The transfer took place without objection because the mother of S.S. requested it and HRS concurred. The basis of the transfer to Polk County was that the mother and child were residents Polk County; the child was temporarily visiting her maternal grandparents in Nassau County, and the alleged acts upon which the dependency petition was based took place in Osceola County, in close proximity to Polk County, the resident county of the mother and S.S. The legislative intent specified in section 112.3187(2) provides that the purpose of the Act is to protect persons who disclose information alleging "improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee." Moreover, section 112.3187(5)(a) and (b), Florida Statutes (1993), provides that the information disclosed must include:
(5) NATURE OF INFORMATION DISCLOSED.-The information disclosed under this section must include:
(a) Any violation of suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or *704 agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety or welfare.
(b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.
We find that Irven's complaint about a legally appropriate court-approved venue transfer in a child dependency proceeding does not fall within the specifics of the disclosure of information sought to be protected by the "Whistle-Blower's Act."
In the final analysis, even had the S.S. dependency proceedings, on the basis of Irven's complaints, been determined to have been fundamentally unfair to any party, the result would not have been a dismissal of the proceedings, but a remand for further proceedings consistent with fairness and due process. See In Interest of A.P., 624 So.2d 340 (Fla. 1st DCA 1993); In Interest of S.J.T., 475 So.2d 951 (Fla. 1st DCA 1985). In A.P., for example, had an HRS employee communicated departmental failures or deficiencies that led to a reversal of the dependency adjudications there, such communications simply would not rise to the level of "whistle-blower" acts as contemplated by the statute. Such procedural deficiencies were not apparently present in the case involving S.S. The child was timely adjudicated dependent and continued in the sheltered supervision of her maternal grandparents. No appeal was taken. No improprieties were alleged nor attack on the proceeding made in any manner except for Irven's complaints regarding her duties that were incumbent upon her upon an apparently proper change of venue. We conclude that intradepartmental complaints regarding the progress or process of a matter subject to judicial supervision and determination cannot equate to "whistle-blower" acts absent evidence of fraudulent or dishonest behavior in the proceedings.
We therefore reverse the final judgment for Irven entered below and instruct that a directed verdict be entered for HRS.
THREADGILL and CASANUEVA, JJ., Concur.