790 So.2d 403 (2001)
Karen IRVEN, Petitioner,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Respondent.
No. SC94926.
Supreme Court of Florida.
April 19, 2001.
Rehearing Denied July 10, 2001.
*404 Peter J. Winders and J. Kevin Carey of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, and Sylvia H. Walbolt, Robert E. Biasotti and Joseph H. Lang, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, FL, for Petitioner.
David H. McClain of McClain & Associates, P.A., Tampa, Florida, for Respondent.
G. "Hal" Johnson, General Counsel, Florida Police Benevolent Association, FL, Thomas W. Young, III, General Counsel, Florida Education Association/United; Pamela L. Cooper, General Counsel, Florida Teaching Profession-National Education Association, and Alma Gonzalez-Neimeiser, General Counsel, The Florida Council of the American Federation of State, County and Municipal Employees, Tallahassee, FL, for The Florida Council of the American Federation of State, County and Municipal Employees, The Police Benevolent Association, Florida Education Association/United and Florida Teaching Profession-National Education Association, Amici Curiae.
SHAW, J.
We have for review Department of Health & Rehabilitative Services v. Irven, 724 So.2d 698 (Fla. 2d DCA 1999), which expressly and directly conflicts with Martin County v. Edenfield, 609 So.2d 27 (Fla. 1992). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
Petitioner filed an action under the Whistle Blower's Act, sections 112.3187-112.31895, Florida Statutes (1993).[1] She alleged that her termination of employment was in reprisal for questioning the propriety of a transfer of a child dependency action from Nassau County to Polk County, the mother's residence.
Petitioner testified at trial that the child's mother and respondent petitioned the Nassau County trial court to transfer the case pursuant to Florida Rule of Juvenile Procedure 8.205(b) (which, among other things, considers the "usual residence" of the child). On January 21, *405 1994, without objection, the court granted the motion to transfer notwithstanding the fact that the child lived with her maternal grandparents in Nassau County. Petitioner was assigned the dependency action subsequent to the transfer and complained in writing to Linda Fuchs, her supervisor, and Roland Reis, an HRS attorney, relative to the impropriety of the Polk County venue given that the child's usual residence was actually in Nassau County with her grandparents. Petitioner also submitted evidence that she made three intradepartmental complaints relative to the handling of the dependency proceeding focusing primarily on the change of venue. She was discharged allegedly because of her complaints relative to the handling of the transfer.
The jury returned a verdict in petitioner's favor and respondent appealed. The central issue on appeal was "whether the acts and communications by petitioner were acts defined and protected by the `Whistle-Blower's Act.'" Department of Health & Rehabilitative Services v. Irven, 724 So.2d 698, 699 (Fla. 2d DCA 1999). In holding that petitioner's complaints did not constitute behavior protected under the Act, the Second District Court of Appeal explained that
it is clear to us that the "Whistle-Blower's Act," ... clearly and unequivocally waives sovereign immunity for the purposes of the "Remedies" and "Relief" afforded by subsections 112.3187(8) and (9). It is equally clear to us, however, that because any waiver of sovereign immunity must be clear and unequivocal (see Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla.1958)), the waiver must be limited to the acts or conduct clearly and unequivocally prohibited or protected against. Therefore, the waiver must be strictly construed and applied. A protection against acts not clearly delineated as prohibited or protected must not be implied.
Id. Viewing the Act in this narrow light, the district court found that petitioner's complaints were not protected and that to decide otherwise would turn "every disagreement by an agency employee with the handling of a matter subject to judicial supervision and control" into a whistleblower action. Id. at 703. The district court found that petitioner's "chief complaint was the transfer of venue," which was subject to the trial court proceedings. Id. To that end, the court found that "Irven's complaint about a legally appropriate [and] court-approved venue transfer in a child dependency proceeding does not fall within the specifics of the disclosure of information sought to be protected by the... Act." Id. at 704. The court concluded that "intradepartmental complaints regarding the progress or process of a matter subject to judicial supervision and determination cannot equate to `whistleblower' acts absent evidence of fraudulent or dishonest behavior in the proceedings." Id. The district court reversed the trial court's judgment for petitioner and ordered that a directed verdict be entered for respondent.
The conflict issue is whether the Whistle Blower's Act should be strictly or liberally construed. We agree with petitioner that the Act is remedial and should be given a liberal construction. See Martin County v. Edenfield, 609 So.2d 27, 29 (Fla.1992) ("[W]e believe it clear that the [public employee] Whistle-Blower's Act is a remedial statute designed to encourage the elimination of public corruption by protecting public employees who `blow the whistle.' As a remedial act, the statute should be construed liberally in favor of granting access to the remedy."); Hutchison v. Prudential Ins. Co., 645 So.2d 1047, 1049 (Fla. 3d DCA 1994) (holding that *406 under Edenfield, the Act should be liberally construed).
Respondent's argument that the Act should be strictly construed because it is in derogation of the common law is unavailing. When a statute is both in derogation of the common law and remedial in nature, the rule of strict construction should not be applied so as to frustrate the legislative intent. See Golf Channel v. Jenkins, 752 So.2d 561, 566 n. 4 (Fla.2000); Stokes v. Liberty Mut. Ins. Co., 213 So.2d 695 (Fla.1968). The statute should be construed liberally in order to give effect to the legislation. See Golf Channel, 752 So.2d at 566 n. 4; Stokes, 213 So.2d at 697. In Stokes, this Court explained in a similar situation that:
[The Wrongful Death of Minors Act] is a new and independent cause of action, unknown to the common law....

Nolan v. Moore, [88 So. 601 (Fla. 1920)], reminds us that since the statute is remedial in nature it should be construed so as to afford the remedy clearly intended. On the other hand, it should not be extended to create rights of action not within the intent of the lawmakers as reflected by the language employed when aided, if necessary, by any applicable rules of statutory construction. Klepper v. Breslin.

Id. at 697. See Klepper v. Breslin, 83 So.2d 587, 592 (Fla.1955)("[T]he Florida act is in derogation of the common law and because of this ordinarily would be strictly construed, nevertheless we have held that it is remedial in nature and should be accorded a liberal construction consistent with the objective sought to be accomplished.").
The district court's strict construction is incompatible with the broad language in the Act which establishes a wide scope of activity that may give rise to its protections. For example, the Act provides that an employee may bring an action when the whistle-blowing concerns "[a]ny ... suspected violation of any ... law, rule, or regulation committed by an employee or agent of an agency," or with respect to "[a]ny ... suspected act of ... misfeasance... or gross neglect of duty committed by an employee or agent of an agency." § 112.3187(5), Fla. Stat. (1993). If the plain meaning of this section leaves any doubt as to the inclusiveness of this right of action and the broad protections afforded, the Legislature also provided that it is "the intent of the Legislature to prevent agencies ... from taking retaliatory action against any person who discloses information to an appropriate agency alleging improper use of governmental office ... or any other abuse ... on the part of an agency, public officer, or employee." § 112.3187(2), Fla. Stat. (1993). The statute could not have been more broadly worded.
Turning to the merits of the case, we hold that petitioner's claim withstands respondent's motion for judgment notwithstanding the verdict. See Stokes v. Ruttger, 610 So.2d 711, 713 (Fla. 4th DCA 1992).[2] Viewing the facts and reasonable *407 inferences in favor of the verdict leads to the conclusion that respondent committed an act of misfeasance[3] by knowingly misinforming the court relative to facts material to the dependency action. Respondent submitted false information to the trial court that was critical to its resolution of the venue issue and expressly refused to correct the misrepresentation.[4] Thus, petitioner's conduct falls within the broadly worded protections of the Act concerning suspected violations of a law, rule, or regulation committed by an agent of HRS, or with respect to a suspected act of misfeasance by an HRS agent. See § 112.3187(5), Fla. Stat. (1993). Accordingly, we hold that petitioner's complaints regarding HRS's conduct fall within the protections of the Whistle-Blower's Act.
Based on the foregoing, we quash the decision below, remand the case for reinstatement of the verdict, and reaffirm Edenfield.
It is so ordered.
HARDING, PARIENTE, and LEWIS, JJ., concur.
WELLS, C.J., and ANSTEAD and QUINCE, JJ., dissent.
NOTES
[1] The Act provides in part:

112.3187 Adverse action against employee for disclosing information of specified nature prohibited; employee remedy and relief.
. . . .
(4) Actions prohibited.
(a) An agency or independent contractor shall not dismiss, discipline, or take any other adverse personnel action against an employee for disclosing information pursuant to the provisions of this section.
. . . .
(5) NATURE OF INFORMATION DISCLOSED.The information disclosed under this section must include:
(a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
(b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.
§ 112.3187, Fla.Stat. (1993) (emphasis added).
[2] When presented with a motion for judgment notwithstanding the verdict, the trial court must

view all of the evidence in a light most favorable to the non-movant, and, in the face of evidence which is at odds or contradictory, all conflicts must be resolved in favor of the party against whom the motion has been made. Similarly, every reasonable conclusion which may be drawn from the evidence must also be construed favorably to the non-movant. Only where there is no evidence upon which a jury could properly rely, in finding for the plaintiff, should a directed verdict be granted. It goes without saying that a motion for directed verdict should be treated with special caution....
Stokes, 610 So.2d at 713 (quoting Collins v. School Bd. of Broward County, 471 So.2d 560, 563 (Fla. 4th DCA 1985)).
[3] Misfeasance is defined as the "improper doing of an act which a person might lawfully do; and `malfeasance' is the doing of an act which a person ought not do at all." Black's Law Dictionary 1000 (6th ed.1990).
[4] For example, petitioner testified at trial as follows:

One of the concerns which I raised about this case in my different Whistle Blowing memos was the fact that thea document which had gone into court had a false statement on it. It stated that the child normally resides in Polk County. And that simply wasn't true. The child never resided in Polk County, had never lived in Polk County.
. . . .
A. This is exactly what I am talking about. This is an affidavit which Ms. Halla did and-in which she states that the child never lived in Polk County. She says that.
. . . .
Q. Did H.R.S. ever file a court document, any papers, that contradicted that affidavit from Ms. Halla?
A. Yes, they did.
Q. What did they file?
A. They filed ... a[m]otion to have the case transferred. And on that they stated that the child normally residesusual residenceis in Polk County. Which simply wasn't true. And they filed that up in Nassau County too.
. . . .
A. Yes, I asked our attorney here, Roland Reis, if he please would address that that mistakethat it happened up there in Nassau County. And if he would make a motion here in Polk County to address this problem. And he stated he wouldn't do that....