PARIENTE, J.,
dissenting.
The issue in this case is a very narrow one: whether the Administrative Law Judge (ALJ) has jurisdiction to determine whether obstetrical patients were given the required notice under section 766.316, Florida Statutes (Supp.1998). The answer is based on principles of statutory interpretation. And the answer affects only a small number of cases because the language of the statute was amended in 2003. There is no question that as of 2006, the Legislature has unambiguously vested exclusive jurisdiction in the ALJ to make all factual determinations as to whether the notice requirements of section 761.316 were satisfied. See majority opinion at 717 n. 18.
Both the majority and the dissents base their conclusions as to whether the circuit court or the ALJ has jurisdiction to determine notice on the language of the statute. I conclude that the reasoning of Chief Justice Lewis’s dissent and Justice An-stead’s dissent, which incorporates Judge Canady’s opinion, is more persuasive than the majority’s reasoning. First, the actual language vesting jurisdiction in the ALJ to make determinations on the compensability of a claim lists only three specific findings that the ALJ must make, none of which include the issue of notice. See § 766.309, Fla. Stat. (Supp.1998). Second, whether an obstetrical patient received the required notice is completely distinct from the compensability of a claim.
Third, as Chief Justice Lewis points out, this Court has previously determined that because the NICA statute limits common law rights, it must be strictly construed. See Florida Birth-Related Neurological Injury Compensation Ass’n v. McKaughan, 668 So.2d 974, 979 (Fla.1996). Further, as we explained in McKaughan, we take into consideration that this statute abridges Florida’s constitutional guarantee of access to the courts. See id. at 979 n. 3; see also § 766.303, Fla. Stat. (Supp.1998) (providing that “[t]he rights and remedies granted by this plan on account of a birth-related neurological injury shall exclude all other rights and remedies ... at common law or otherwise, ... except ... where there is clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property”).[20] Statutes that limit access to the courts “must be narrowly construed in a manner that favors access.” Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So.2d 891, 897 (Fla.2002). These dual canons require the Legislature to clearly articulate its intent to limit access to the courts or abrogate common law *723 rights. The Legislature did not do so in the version of the statute we are construing in this case. Although the issue is a narrow one affecting a small number of cases, the principles of strictly construing statutes that are in derogation of the common law or that limit access to the courts are ones to which we should faithfully adhere. For these reasons, I concur with the dissents.
LEWIS, C.J., and ANSTEAD, J., concur.

. For this reason, NICA is not a remedial statute that should be liberally construed. Unlike legislation such as the Wrongful Death Statute and the Whistle-Blower's Act, which created remedies unknown at common law and which we have stated should be liberally construed, see BellSouth Telecomm, v. Meeks, 863 So.2d 287, 290 (Fla.2003); Irven v. Dep’t of Health & Rehabilitative Servs., 790 So.2d 403, 406 (Fla.2001), NICA mandates an administrative remedy in lieu of a common law remedy for most claims arising from birth-related neurological injuries.